# Menken Simpson & Rozger LLP

80 PINE STREET, 33ʳᴰ FLOOR

NEW YORK, NEW YORK 10005

TELEPHONE: (212) 509-1616

FACSIMILE: (212) 509-8088

WWW.NYEMPLOYEELAW.COM

BRUCE E. MENKEN
JASON J. ROZGER∆
SCOTT SIMPSON
BRENNA RABINOWITZ
RAYA F. SAKSOUK

∆ALSO ADMITTED NJ

ALAN SERRINS
OF COUNSEL

March 2, 2023

Hon. Andrew L. Carter
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:  *Bryan v. Johnson Controls Fire Protection LP*, Case No. 22-CV-0380 ALC-RWL

Your Honor:

This firm represents Plaintiffs in the above-captioned matter, and I write jointly with defense counsel pursuant to the Court's Order directing the parties to file a letter motion for approval of any agreed-upon settlement in this Fair Labor Standards Act ("FLSA") matter pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) (ECF Doc. No. 13). Subject to Court approval, Plaintiffs Christopher Bryan, Todd Prizgint, Brian Haffey, Bruno Vendittelli, and Thomas Damato ("Plaintiffs") and Johnson Controls Inc. ("Defendant" or "Johnson Controls") have settled the Plaintiffs' claims for one hundred fifty thousand dollars ($150,000.00). In this action, Plaintiffs, who were employed by Defendants performing work in heating, ventilation, and air conditioning ("HVAC"), assert claims under the prevailing wage provisions of the New York Labor Law ("NYLL") and FLSA claims for failure to pay overtime at the required prevailing wage rate. This joint letter and the attached exhibits represent our submission in support of the parties' proposed settlement agreement.

Plaintiffs initially filed this action on January 14, 2022. See ECF No. 1. Plaintiffs filed an Amended Complaint on January 31, 2022, see ECF No. 6, and a Second Amended Complaint, which is the operative Complaint, was filed on May 3, 2022. *See* ECF No. 9. The Plaintiffs herein are workers currently employed by Johnson Controls Inc. and who performed heating, ventilation,

and air conditioning ("HVAC") work on both private and public job sites in the State of New York. Although all are members of an electricians' union, Local 3 of the IBEW, Plaintiffs allege their regular rate of pay was below the prevailing wage rate applicable to HVAC work on public projects, particularly in Nassau and Suffolk counties. *Id.*

Following the initial damages calculations, and continuing throughout the process, the parties engaged in arms-length settlement negotiations through their respective attorneys. The parties attended mediation before Roger H. Briton, Esq., on October 18, 2022. Although the matter was not resolved during the mediation, the parties continued to negotiate settlement following the mediation, including exchanging additional data, documents, and expert calculations. See ECF No. 16. On or about February 9, 2023, the parties reached an agreement in principle resolving Plaintiffs' claims in this matter.

### I. Fairness and Reasonableness of the Settlement

The proposed Settlement Agreement (the "Agreement") is attached as Exhibit 1. The total settlement payment (the "Settlement Payment") is **$150,000.00** and is apportioned according to the number of hours each Plaintiff alleged he worked, with one-third of the total settlement payable to Plaintiffs' counsel.

The Settlement Payment will be allocated as follows:

- $11,560 to Christopher Bryan, half of which represents alleged unpaid wages and half of which represents liquidated damages pursuant to the FLSA;

- $6,820 to Todd Prizgint, half of which represents alleged unpaid wages and half of which represents liquidated damages pursuant to the FLSA;

- $27,010 to Brian Haffey, half of which represents alleged unpaid wages and half of which represents liquidated damages pursuant to the FLSA;

- $4,950 to Bruno Vendittelli, half of which represents alleged unpaid wages and half of which represents liquidated damages pursuant to the FLSA;

- $49,660 to Thomas Damato, half of which represents alleged unpaid wages and half of which represents liquidated damages pursuant to the FLSA; and

- $50,000 in attorneys' fees to Plaintiffs' counsel, Menken Simpson & Rozger LLP ("MSR").

*See* Exhibit 1, pp. 1-2. Prior to this lawsuit, Defendant made restitution payments in the following amounts to four of the five Plaintiffs prior to Plaintiffs bringing the instant lawsuit:

- $7,290.23 to Todd Prizgint;
- $6,439.33 to Christopher Bryan;
- $4,923.81 to Bruno Vendittelli; and
- $782.87 to Thomas Damato.

These payments totaled $19,436.24.

Under *Cheeks* and its progeny, a court should consider the totality of the circumstances, including but not limited to the below factors, in determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion. *Beckert v. Ronirubinov*, No. 15 CIV. 1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (*citing Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In this case, as a preliminary matter, the "agreement is the product of arms-length bargaining between experienced counsel" and involves no "possibility of fraud or collusion." *Id*. The Court can easily draw that conclusion based on the history of this litigation, where the attorneys have engaged in extensive negotiation, including an entire day of mediation after which the parties continued to negotiate for nearly four months before reaching an agreement.

As for the range of recovery, by Plaintiffs' calculation, the Plaintiffs are owed about $147,225 in unpaid prevailing wages, prevailing wage fringe benefits, and overtime pay, after accounting for the $19,436.24 in pre-lawsuit restitution payments. Thus, the gross settlement is slightly more than the total owed before interest, liquidated damages on the overtime pay, and counsel fees. The Settlement Amount is therefore an excellent result for Plaintiffs, especially considering they will receive their money within a little over a year after filing the instant lawsuit. A greater recovery would almost assuredly require prevailing on all contested issues at trial.

This settlement enables the parties to "avoid both the anticipated burdens and expenses in establishing their respective claims and defenses." *Id.* Since the commencement of this lawsuit, Plaintiffs have continued working for Defendant. Further litigation, which would include deposition preparation, depositions, and trial, would require Plaintiffs to miss valuable time at work, and therefore to sacrifice additional hourly wages they could be earning. Moreover, Plaintiffs are hourly workers with families to take care of who have been eager to be made whole as a result of this case, which is what this settlement achieves.

Both sides faced risks by continuing this litigation. There is a chance that the Court would find that the "electrical maintenance" prevailing wage rate applied to some portion of the work Plaintiffs did. The electrical maintenance rate is much lower than the HVAC Electrician rate Plaintiffs sought in this lawsuit, especially in terms of fringe benefits. And, of course, a trial would likely be at least 18 months away, if not more. By litigating this matter at trial, Defendants risked that the Plaintiffs could recover liquidated damages on their overtime claims, substantial attorneys' fees, and prejudgment interest. The agreed upon settlement allows each side to avoid these risks while also making Plaintiffs more than whole much more expeditiously than could be achieved by going to trial.

## II. Attorneys' Fees

Plaintiffs seek an award of $50,000 in attorneys' fees, or one-third of the Settlement Amount. Courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases. *See Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District."); *Najera v. Royal Bedding Co., LLC*, No. 13-CV-1767 NGG MDG, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (*citing Palacio v. E*TRADE Fin. Corp.*, No. 10–CV–4030 (LAP)(DCF), 2012 WL 2384419, at *6 (S.D.N.Y. June 22, 2012)) ("one-third contingency fees … are commonly accepted in the Second Circuit in FLSA cases"), *but see Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) ("there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit.")

Plaintiffs' retainer agreement with their counsel provides for a contingency fee of one-third of any settlement reached, exclusive of costs and disbursements.[1]  In order to substantiate our requested contingency fee of one-third of the settlement sum, or $50,000, we have appended contemporaneous billing records as Exhibit 2, which reflects the attorneys' work over the roughly 13-month life of this case.

Plaintiffs' counsel Jason Rozger has spent 43.7 hours working on this case. *See* Ex. 3 (Mr. Rozger's time entries are labeled "Litigation"). He does not have a single billing rate because he represents clients of widely differing socioeconomic status. As was true in this case and a significant majority of wage and hour cases, he performs litigation almost invariably on a contingency basis. With respect to people who can afford his full fee, he currently charges and is paid $500 per hour.  This is the hourly rate he commands in the relevant marketplace given his experience and expertise.

Mr. Rozger has been a partner of MSR since it was formed in 2009 under its former name Beranbaum Menken LLP.  The firm concentrates on employment law on the plaintiff's side, with a focus on prosecuting class actions in wage and hour cases.  MSR has brought several class action lawsuits alleging violations of various state's prevailing wage laws that have resulted in substantial settlements after years of hard-fought litigation. *Ramos v. SimplexGrinnell LP*, No. 07-CV-981 (SMG), 2012 WL 13102520, (E.D.N.Y. July 17, 2012); *Ramos v. SimplexGrinnell LP,* 773 F.3d 394, 395 (2d Cir. 2014); *Bennett v. SimplexGrinnell LP*, No. 11-CV-01854-JST, 2015 WL 12932332 (N.D. Cal. Sept. 3, 2015); *Rodriguez v. Simplex Grinnell LP*, No. 16 C 9605, 2021 WL 3797769, at *1 (N.D. Ill. Aug. 26, 2021).

Mr. Rozger graduated from New York University School of Law in 1996. He joined Beranbaum Menken Ben-Asher & Fishel LLP, one of MSR's predecessor firms, in 2000, after a one-year clerkship in New Jersey Superior Court and three years with Bronx Legal Services.  Mr. Rozger then joined Beranbaum Menken Ben-Asher & Bierman, another of MSR's predecessors, and became a non-equity partner there in 2007. Mr. Rozger has been practicing law for nearly 25 years in New York City.  He is a member of the New York and New Jersey bars and the federal

---

[1] Plaintiffs incurred $402 in expenses (which does not take into account photocopying, printing, and travel expenses, or the paralegal work performed on this case by Edwin Gonzalez).  Plaintiffs' counsel will not seek reimbursement for these expenses separately from their one-third share of the Settlement Amount.

4

courts of New York and New Jersey. He has twice argued before the United States Court of Appeals for the Second Circuit, argued many motions in federal court and has tried as lead counsel six cases to verdict. He has been selected a Super Lawyer in New York since 2014. He presented continuing legal education sessions at the National Employment Lawyers' Association (NELA) annual convention as well as before the local NELA-NY chapter. For the last 22 years, his practice has consisted almost exclusively of representing individuals and classes of individuals in employment and civil rights cases. He has been designated lead or co-lead counsel in numerous certified class actions, *see, e.g.*, *Andryeyva v. New York Health Care*, 994 N.Y.S.2d 278 (Sup. Ct. Kings Cty. 2014); *Kahler v. County of Rensselaer,* 2004 WL 6067128 (N.D.N.Y. 2004); *Mitchell v. County of Clinton*, No. 06 Civ. 254, 2007 WL 1988716, at *6 (N.D.N.Y. July 5, 2007); *Marriott v. County of Montgomery,* 426 F.Supp. 2d 1 (N.D.N.Y. 2006); *McDaniel v County of Schenectady,* 2007WL3274798, No. 04-CV-0757(GLS)(RFT) (N.D.N.Y. November 5, 2007); *Ramos v. SimplexGrinnell LP.,* 796 F.Supp.2d 346 (E.D.N.Y. 2011); *Grenawalt v. AT&T Mobility,* No. 11 Civ. 2664 (ALC) (S.D.N.Y.); *Accardi v. Honeywell Int'l Inc.,* No. 1:16-CV-03861 (SDA), 2018 WL 8221681, at *1 (S.D.N.Y. June 28, 2018).

Menken Simpson & Rozger's associate Raya Saksouk has spent 9.3 hours working on this case. *See* Ex. 2 (Ms. Saksouk's time entries are labeled "RS Time"). Ms. Saksouk graduated in May of 2019 from New York University School of Law, where she worked with attorneys at the New York City Commission on Human Rights, the Brennan Center for Justice, the U.S. Department of Labor, and the Legal Aid Society, advocating for clients on issues ranging from criminal justice reform to housing and employment discrimination. Since joining MSR, Ms. Saksouk has assisted partners in litigating many employment cases, including multiple class actions. *See, e.g.*, *Maddison v. Comfort Systems USA (Syracuse), Inc.*, Case No 17-cv-359 (NDNY); *Badzio v. Americare Certified Special Services Inc., et al.*, 506155/2016 (Kings Cty. Sup. Ct.). Ms. Saksouk's hourly rate is $200, which is the hourly rate she commands in the relevant marketplace given her experience and expertise.

Menken Simpson & Rozger's associate Brenna Rabnowitz has spent 4.5 hours working on this case. *See* Ex. 2 (Ms. Saksouk's time entries are labeled "RS Time"). Her hourly rate is $375. She is a 2016 graduate of the University of Pennsylvania Law School where she was Managing Online Editor of the Journal of Constitutional Law, an Equal Justice Foundation Summer Fellow, and a Dean's Scholar, which earned her a three-year merit-based scholarship. After law school, she worked for a year as an associate in the New York office of Freshfields Bruckhaus Deringer LLP ("Freshfields"), a prominent multinational law firm, where she worked on complex regulatory matters. Ms. Rabinowitz then clerked for United States District Judge A. Richard Caputo in the Middle District of Pennsylvania, where she worked on numerous matters, including a summary judgment opinion in an employment discrimination case and a First Amendment trial involving termination of a public employee.

Since joining Menken Simpson & Rozger LLP's predecessor firm Beranbaum Menken LLP in 2018, Ms. Rabinowitz has worked on dozens of cases, where she has been responsible for handling discovery, motions, and pleadings, as well as taking and defending depositions. Ms. Rabinowitz was selected as a Super Lawyers Rising Star for 2022.

Plaintiffs' lodestar is therefore $25,397 in fees plus $402 in expenses, totaling $25,799. Courts in this district routinely award attorneys' fees based on a percentage, rather than lodestar, method. *See Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *2 (S.D.N.Y., 2016) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417, 419 (2d Cir. 2010)) ("District courts in this circuit 'may award attorneys' fees in common fund cases under either the lodestar method or the percentage of the fund method.' However, 'the trend in this Circuit is toward the percentage method.'"). Additionally, the lodestar method potentially creates a "disincentive to early settlement." *Id.* Given the overall fairness of the settlement and this jurisdiction's routine approval of one-third of a settlement in attorneys' fees, the parties request that the Court award Plaintiffs' counsel $50,000.00.

The parties therefore jointly request that the Court approve the terms of the agreed upon settlement. We thank the Court for its attention to this matter.

Sincerely,

/s/

Jason Rozger